## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**AMOS JAMES STROUP, JR.**                                                      **PLAINTIFF**
**ADC #108618**

**v.**                              **3:21-CV-158-DPM-ERE**

**DR. MARTY HEARYMAN,** *ET AL.*                              **DEFENDANTS**

## <u>RECOMMENDED DISPOSITION</u>

This Recommendation has been sent to United States District Chief Judge D.P. Marshall Jr. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Objections should be specific and include the factual or legal basis for the objection.

Objections must be filed within 14 days. If you don't object, you risk waiving the right to appeal questions of fact. If no objections are filed, Chief Judge Marshall can adopt this Recommendation without independently reviewing the record.

## I.    INTRODUCTION

Plaintiff Amos Stroup filed this 42 U.S.C. § 1983 action against Defendants Dr. Marty Hearyman, Health Services Administrator ("HSA") Marjorie Hall, and Nurse Sandra Lake alleging that they denied him constitutionally adequate medical care.

Defendants have filed a motion for summary judgment, brief in support, and statement of undisputed material facts. *Docs. 26-28.* Mr. Stroup has filed a response

1

and Defendants have replied. *Docs. 61-63, 66*. Mr. Stroup also filed a motion for partial summary judgment, to which Defendants responded. *Docs. 48, 56-57.*

For the reasons explained below, the Court recommends granting Defendants' motion for summary judgment *(Doc. 53)* and denying Mr. Stroup's motion for partial summary judgment *(Doc. 48)*.

## II.    FACTS WITHOUT GENUINE DISPUTE[1]

On March 5, 2021, Mr. Stroup injured his wrist during an altercation with another inmate. While in the infirmary, he was treated by Nurse Jacqueline Peterman.[2] Nurse Peterman called Dr. Hearyman about the injury, and per his instructions, she provided Mr. Stroup with naproxen, an ice pack, and a wrist brace. *Doc. 55-1 at 1.* She also scheduled Mr. Stroup for a March 15, 2021 follow-up appointment with Nurse Lake. *Id. at 3.* The next day, Mr. Stroup advised Nurse Peterman that his pain level was a nine out of ten. She replaced the brace with an ace wrap, gave him another ice pack, and told him to place a sick call if needed. *Id. at 62.* From March 7-11, 2021, Mr. Stroup voiced no complaints and repeatedly was reminded to follow the sick call process. *Id. at 63-65.* On March 12, Nurse Rodney

---

[1] These facts are established by the relevant medical records.

[2] Nurse Peterman is not a named Defendant.

Walker[3] refilled Mr. Stroup's naproxen prescription, noting that it was for wrist pain. *Id. at 65.*

At a March 15, 2021 appointment, Nurse Lake noted that Mr. Stroup suffered from right wrist pain with swelling. *Id. at 6.* Suspecting Mr. Stroup's right wrist might be broken, she ordered x-rays. *Id.* She gave Mr. Stroup ibuprofen and a different wrist brace. *Id.*

On March 22, 2021, Nurse Lake reviewed the x-rays, which revealed a "right auricular fracture of [the] distal radius and ulnar fracture." *Id. at 11.* Nurse Lake scheduled an off-site orthopedic appointment. *Id. at 7.*

On March 25, 2021, Mr. Stroup made a sick call and complained that his wrist pain was eight out of ten. *Id. at 70.* He was reminded to take his medicine, apply the ace wrap, and make a sick call if his condition worsened. *Id. at 71.*

At a March 30, 2021 orthopedic appointment, Mr. Stroup described his pain as "mild to moderate." *Id. at 19.* He had surgery the next day. *Id. at 73.* The surgery was deemed successful. *Doc. 55-2.*

On August 5, 2021, Mr. Stroup filed his complaint in this case alleging that Defendants Dr. Hearyman, HSA Hall, and Nurse Lake were deliberately indifferent to his serious medical needs. *Doc. 1.*

---

[3] Nurse Walker is not a named Defendant.

## III.    SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if – but only if – the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. *See* FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). The moving party bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). Because Defendants are the moving party, the Court will construe any disputed facts in a light favorable to Mr. Stroup.

## IV.    DISCUSSION

Mr. Stroup claims that Defendants demonstrated deliberate indifference to his serious medical needs when they: (1) assumed he had a sprained wrist rather than a broken wrist; and (2) did not immediately take x-rays.

The "deliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation omitted). Deliberate indifference, in this context, has objective and subjective components; a prisoner must show: (1) that he suffered from objectively serious medical needs; and

(2) that prison officials knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Defendants do not dispute that Mr. Stroup had an objectively serious medical need. Instead, they argue that summary judgment is proper because Mr. Stroup cannot show that any Defendant was deliberately indifferent to his need for medical care. Defendants submitted the affidavit of Dr. Chris Horan, Regional Medical Director for Wellpath, LLC. *Doc. 55-3*. Dr. Horan testifies that, after reviewing Mr. Stroup's medical records from the relevant time period, it is his medical opinion that "Mr. Stroup received adequate care for his wrist injury. The delay in Mr. Stroup seeing Ms. Lake and receiving the x-ray may indeed have caused a delay in seeing the orthopedist; however, it did not negatively affect his overall health condition." *Id. at 6*. Dr. Horan also correctly notes that "during March 2021, Mr. Stroup was seen every few days by ADC mental health staff and once by the psychiatrist, but he did not complain about any perceived lack of medical care or of pain." *Id. at 4.*

"In order to demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the inmate's health." *Thompson v. King*, 730 F.3d 742, 746–47 (8th Cir. 2013). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. Negligence, even gross negligence, is not deemed "an unnecessary and

wanton infliction of pain." *Estelle*, 429 U.S. at 105. Defendants are liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

Additionally, disagreement with treatment decisions cannot support a deliberate indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Where medical records show that treatment was provided, and a physician's affidavit states that the care was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

As discussed below, based on the applicable legal standard and the factual record before the Court, Mr. Stroup fails to present evidence that would allow a reasonable jury to find in his favor on his medical deliberate indifference claim.

## A.    Assuming Mr. Stroup's Wrist Was Sprained

Mr. Stroup argues that Defendants were deliberately indifferent to his medical needs by assuming his wrist was sprained, rather than broken. First, neither HSA

Hall[4] nor Nurse Lake[5] were involved in assessing Mr. Stroup's injury on March 5, and Mr. Stroup has presented no evidence that they were ever aware of his injury. Second, as for Dr. Hearyman's assessment based on the call from Nurse Peterman, the undisputed facts will not support a finding of deliberate indifference. Dr. Hearyman directed the nurse to provide Mr. Stroup with naproxen, an ice pack, and a wrist brace. As Dr. Horan explains, it was:

> certainly within [Dr. Hearyman's] medical judgment to decide whether the description of the injury as provided by the nurse indicated an x-ray was necessary. Even after a break, there is usually a lag time for swelling and inflammation to go down before ortho treatment is rendered. Immobilization and nonsteroidal anti-inflammatories (such as naproxen and ibuprofen) are generally appropriate treatment until then.

Horan Affidavit, *Doc. 55-3 at 5*. After receiving Nurse Peterman's assessment, Dr. Hearyman directed her to immediately start conservative treatment. Such conduct can hardly be characterized as "criminally reckless."

Mr. Stroup complains that Dr. Hearyman gave orders on how to treat his injury but "chose not to examine [his] injury" himself or "follow-up to ensure his

---

[4] The undisputed facts are that Nurse Peterman, not HSA Hall, called Dr. Hearyman about Mr. Stroup's injury. *Doc.* 55-1 at 1. Furthermore, HSA Hall clocked out at 4:31 p.m. on March 5, 2021. *Doc.* 55-4 at 2. Mr. Stroup did not arrive to the infirmary until 4:59:55 p.m. *Doc. 55-1 at 1*. Mr. Stroup presents no evidence that HSA Hall was even aware of his injury.

[5] Mr. Stroup concedes that Nurse Lake was not aware of, or involved with, his treatment until the March 15, 2021 appointment. *Doc.* 63 at 5.

'orders' were carried out properly." *Doc. 61 at 1*. However, Mr. Stroup admits that Dr. Hearyman reviewed Nurse Peterman's notes. *Id.* Mr. Stroup's argument about Dr. Hearyman's lack of an in-person follow-up will not support a finding of constitutionally inadequate medical care.

No reasonable finder of fact could conclude, on this record, that the initial intake and assessment of Mr. Stroup's wrist injury violated his constitutional rights.

**B.      Delay in X-Raying Wrist**

Mr. Stroup argues that Defendants should have immediately taken x-rays. First, as mentioned above, neither HSA Hall nor Nurse Lake were involved in Mr. Stroup's initial intake and assessment on March 5. Second, nothing in the record supports a finding that Dr. Hearyman's failure to immediately order an x-ray rose the level of criminal recklessness required to support a deliberate indifference claim. Notably, Dr. Horan describes this delay as common, and Mr. Stroup provides no evidence to the contrary.

To the extent that Mr. Stroup claims that a delay in receiving x-rays and medical treatment amounted to the deprivation of constitutionally required medical care, his claim fails on this record. "When an inmate claims that a delay in medical care violates the Eighth Amendment, 'the objective seriousness of the deprivation should also be measured by reference to the effect of the delay in treatment.'" *Redmond v. Kosinski*, 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting *Laughlin v.*

*Schriro*, 430 F.3d 927, 929 (8th Cir. 2005) (emphasis in original). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Id.* (quoting *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)). Mr. Stroup submits no evidence that a delay in his receipt of medical care adversely affected his prognosis.

When Mr. Stroup's injury did not improve over a two-week period, x-rays were taken, and an orthopedic appointment was scheduled. One day after the orthopedic appointment, Mr. Stroup underwent successful surgery. Mr. Stroup presents no evidence to support a finding that this short delay harmed his medical prognosis. See *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (the delay of a month from the time the plaintiff's finger was thought to be fractured and the x-ray of the finger was just negligence, not deliberate indifference); *Bryan v. Endell*, 141 F.3d 1290 (8th Cir. 1998) (the delay in treating prisoner's broken hand rendering surgery impractical was only negligence and could not establish a deliberate indifference claim, since as there was no evidence showing officials actually knew of the risk of harm but deliberately failed to act amounting to callousness).

No reasonable finder of fact could conclude, on this record, that the delay in x-raying Mr. Stroup's wrist violated his constitutional rights.

9

## V.    CONCLUSION

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' motion for summary judgment *(Doc. 53)* be GRANTED, and judgment be entered in favor of Defendants.[6] All federal claims should be dismissed with prejudice. Mr. Stroup's "medical malpractice" claim should be dismissed without prejudice.

2.    Mr. Stroup's motion for partial summary judgment *(Doc. 48)* be DENIED.

Dated this 13th day of December, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] Mr. Stroup's amended complaint asserts a claim of "medical malpractice." Since the federal claims are being dismissed, the Court should exercise its discretion to also dismiss any proposed state law claims. *See* 28 U.S.C. § 1367(c)(3) (a court may "decline to exercise supplemental jurisdiction over a claim ... [if] the district court has dismissed all claims over which it has original jurisdiction."). Of course, Mr. Stroup may pursue his state law claims in an Arkansas state court.